1C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

# FILED

| | | |
|---|---|---|
| Jaime T. Zeas, J.D., | ) | |
| | ) | DEC 16 2025 JYS |
| Plaintiff, | ) | THOMAS G. BRUTON |
| | ) | Hon. Judge _____ CLERK, U.S. DISTRICT COURT |
| vs. | ) | |
| | ) | Case No. 25-cv- _____ |
| Illinois Attorney Registration & | ) | |
| Disciplinary Commission; | ) | |
| Illinois Supreme Court; | ) | |
| State of New York Bar; | ) | |
| Supreme Court of New York, Appellate | ) | |
| Division, First Judicial Dep't; | ) | 1:25-cv-15250 |
| District of Columbia Bar; | ) | Judge Charles P. Kocoras |
| District of Columbia Court of Appeals; & | ) | Magistrate Judge M. David Weisman |
| Stephanie Stewart, Esq. | ) | RANDOM/Cat 2 |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES
### UNDER THE UNITED STATES CONSTITUTION & LEGAL MALPRACTICE UNDER SUPPLEMENTARY JURISDICTION

This is a complaint asserted under the U.S. Constitution, as well as, under Section 1983 for the abuse of power while acting under color of state law, brought by Plaintiff, Jaime T. Zeas, J.D., a citizen of the United States and resident of Crystal Lake, Illinois against: The Illinois Attorney and Registration Commission ("ARDC"), The Illinois Supreme Court, The New York Bar, The Supreme Court of New York, Appellate Division, First Judicial Dep't, The District of Columbia Bar and The District of Columbia Court of Appeals. This complaint is also asserted as a cause of action for legal malpractice, under this Court's Supplemental Jurisdiction, against Plaintiff's ethics defense attorney Stephanie Stewart, Esq.

## VENUE AND JURISDICTION

1. This action arises under the Fourth, Eighth, Fourteenth Amendments to the United States Constitution, under Civil Rights Act of 1871, 42 U.S.C. section 1983, as well as, under Article I, Sections 2 and 6 of the Constitution of the State of Illinois.

2. Venue is proper under 28 U.S.C. section 1391 in that Illinois ARDC is headquartered in Chicago, Illinois and the unlawful extended disbarment took place in Chicago, Illinois, therefore, the acts complained of took place in the Northern District, Eastern Division.

3. This Court has jurisdiction in this cause under 28 U.S.C. sections 1331 (original jurisdiction for violation of U.S. Constitution), 1332 (diversity of citizenship and the amount in controversy exceeds $75,000) and 1367 (supplemental jurisdiction "common nucleus of operative facts").

## DEFENDANTS

4. The Illinois Attorney Registration and Disciplinary Commission is a governmental entity of the State of Illinois

5. The Illinois Supreme Court is a governmental entity of the State of Illinois.

6. The New York Bar is a governmental entity of the State of New York.

7. The Supreme Court of New York, Appellate Division, First Judicial Department is a governmental entity of the State of New York.

8. The District of Columbia Bar is a governmental entity of the Territory of the District of Columbia.

9. The District of Columbia Court of Appeals is a governmental entity of the Territory of the District of Columbia.

10. Stephanie Stewart, Esq. is an individual attorney licensed and practicing attorney, specializing in the area of ethics defense, located in Chicago, Illinois.

## CAUSE OF ACTION

11. Jaime T. Zeas, J.D., hereinafter Plaintiff, is a graduate of Northwestern University School of Law (2002) - U.S. top 10.

12. Plaintiff served as a federal elbow law clerk, at the both the trial and appellate levels, in the Fifth Circuit.

13. Plaintiff practiced law as an associate attorney at various of this nation's finest law firms located in New York City, Washington, D.C. and Chicago Illinois.

14. Plaintiff was admitted to practice law in 3 jurisdictions, specifically: The State of New York (N.Y. Bar # 4173514), The Territory of Washington, D.C. (D.C. Bar # 491583) and The State of Illinois (IL Bar # 6288733).

15. Plaintiff was admitted to practice law before the United States Supreme Court, as well as, various federal courts located throughout the United States.

16. On February 3, 2017, Plaintiff, was wrongfully convicted of a crime in McHenry County, Illinois (*People v. Zeas* (15-CF-297, 19th Judicial Circuit)).

17. The matter flowed from a highly-contentious divorce involving a relatively high-dollar marital estate, including but not limited to a custom-built mansion, as well as, child custody.

18. Due to the wrongful conviction, Plaintiff was abducted away and precluded from assisting one of his clients with a $22 million embezzlement and money laundering matter that he was then prosecuting in civil court against various Illinois-based insurance companies, Illinois-based banks, a casino located in Illinois but owned by a Nevada consortium, a Russian bookkeeper embezzler along with her three Russian co-conspirators (*Affiliated Health Group, Ltd., et al. v. Blue Cross Blue Shield of Illinois, et al.*(2013-L-11485, 1ª Div.); (*Affiliated Health Group, Ltd. et al. v. Northern Trust Corp.* (2015-L-006944, 1ª Div.); (*Affiliated Health Group, Ltd., et al. v. CIGNA Healthcare of Illinois, Inc., et al.* (2015-L-008935, 1ª Div.); (*Affiliated Health Group, Ltd. v. Nevada Landing Partnership d/b/a The Grand Victoria Casino, et al.* 2016-L-062007, 2d Div.); and (*Affiliated Health Group, Ltd. v. Powell, Rogers & Smith*).

19. Plaintiff was working on a mixed hourly and 30% contingency fee agreement.

20. Plaintiff hired Stephanie Stewart, hereinafter, Defendant Stewart, to represent him with respect to his licensing in the State of Illinois negatively affected by the wrongful conviction.

21. Plaintiff contracted with Defendant Stewart at her law firm located in Chicago, Illinois.

22. Law licensing in the State of Illinois is overseen by both the Illinois Attorney Registration and Disciplinary Commission ("ARDC") and the Illinois Supreme Court.

23. Defendant Stewart had previously and successfully represented Plaintiff in a matter before ARDC, wherein, a 28-page *Report and Recommendation of the Hearing Board*, was entered by an ARDC panel recommending that the complaint be dismissed (*In re: Jaime T. Zeas, 2014-PR-00069* (Jan. 14, 2016)). See also, 16-page, *Synopsis of Hearing Board Report and Recommendation* (January 2016) again finding that the ARDC Administrator failed to prove her case.

24. It should be noted, Plaintiff feels a kind affinity towards Defendant Stewart on a personal level and greatly appreciates everything that she has attempted to do for him, but when a significant error has been made to the tune of hundreds of thousands of dollars in lost income in over half a decade, causing a near catastrophe to Plaintiff's life, but more so to the life of his loved ones, personal feelings must give way to reasonably contracted for and paid for standards of care.

25. In short, unfortunately, business must take precedence over personal feelings in this dire situation; Plaintiff is loath to add Defendant Stewart as a party via supplemental jurisdiction, but unfortunately if forced to do so.

26. As an aside, Plaintiff is currently seeking to have the wrongful conviction vacated in current Post-Conviction Proceedings.

27. During Year-2017, at the very beginning of her representation of Plaintiff stemming from the wrongful conviction, Defendant Stewart caused to be filed with ARDC, a Motion to Stay ARDC proceedings pending the conclusion of Plaintiff's post-judgment and appellate efforts.

28. Upon information and belief, much of said information provided verbally by Defendant Stewart to Plaintiff during circa October 2023, when an attorney in Illinois has been convicted of a crime, initially they are subject to an "interim suspension" until ARDC proceedings have concluded, thereafter, they may be sanctioned by ARDC by either: i) being *suspended for a definite period of time* (i.e., typically, 1 month to under 3 years),

or ii) be *disbarred for an indefinite period of time*, but may seek reinstatement after a definite period of time has elapsed.

29. Upon the same information and belief, if disbarred, rather than suspended for a definite period of time, the former being the worst possible ARDC sanction, the time-period for reinstatement depends on: 1) whether the convicted attorney *admits culpability* to ARDC for the underlying offense, or 2) whether the attorney *does not admit culpability* to ARDC for the underlying offense.

30. Upon the same information and belief, when a disbarred attorney by Illinois admits culpability to ARDC, she or he may seek reinstatement of her or his Illinois law license after 3 years.

31. Upon the same information and belief, when the a disbarred attorney in Illinois does not admit culpability to ARDC, she or he may seek reinstatement of her or his Illinois law license after 5 years.

32. Thus, if Defendant Stewart had not filed her Motion to Stay in the ARDC proceedings, Plaintiff would have been able to seek reinstatement to the Illinois bar 3 years from the date of disbarment if culpability was admitted or 5 years from the date of disbarment if culpability was not admitted, thus, on or about February 3, 2020 or February 3, 2022, respectively.

33. A disbarment order would have issued during Year-2017, given that Plaintiff had been wrongfully convicted on February 3, 2017.

34. Due, however, to the filed *Motion to Stay*, ARDC did not enter an order of disbarment of Plaintiff during Year-2017 but did so <u>6 years later</u>, specifically, on November 21, 2023 by IL Supreme Court order.

35. Defendant Stewart attempted to have ARDC credit some or all of Plaintiff's 6 years of "interim suspension" in the weeks after the November 21, 2023 order, specifically, during December 2023.

36. The Illinois Supreme Court, however, denied Defendant Stewart's credit request on December 26, 2025. **Exhibit A**.

37. Plaintiff was not apprised of ARDC's disbarment order or denial of credit order until late December 2023 verbally by his ethics defense counsel Defendant Stewart over the telephone.

38. Plaintiff discovered Defendant Stewart's legal malpractice when verbally apprised of ARDC's disbarment order and credit denial order during late December 2023.

39. Given Defendant Stewart's oversight, Plaintiff may not seek reinstatement of his Illinois license until November 21, 2028 – 5 years from the date of the November 21, 2023 disbarment order, but, moreover, **11 years-and-9-months** after the entry of the above-cited Year-2017 wrongful conviction.

40. Rather than a 3 to 5 year wait to recommence the gainful practice of law, Defendant Stewart has caused, by and through her legal professional negligence, an almost **12-year wait**, which is multiples of the standard waiting-period.

41. Defendant Stewart's Motion to Stay filing effectively extended the conclusion of Plaintiff's "interim suspension" by 6 years, from late Year-2017 to late Year-2023, rather than approximately 6 months.

42. Plaintiff is a civil litigator not an ARDC defense attorney.

43. ARDC proceedings have very specific rules and regulations that were completely foreign and unknown to Plaintiff.

44. As a former ARDC prosecutor, Defendant Stewart should have had the proper expertise in this area of law.

45. Plaintiff hired Defendant Stewart for her advertised expertise as an ARDC defense attorney; again, a very specialized area of law.

46. To make matters worse, another jurisdiction, wherein, Plaintiff was admitted to practice law, specifically, The Territory of Washington, D.C. (*In re: Jaime T. Zeas*, No. 17-BG-1253, DDN: 2017-D016), has *automatically*, without any investigation or inquiry of Plaintiff whatsoever, followed Illinois ARDC's Year-2023 disbarment order and not only disbarred Plaintiff, but will not permit his eligibility for reinstatement in their jurisdiction until Illinois does so – after an almost 12 year waiting- period.

47. Plaintiff has contacted the State of New York concerning his eligibility for reinstatement.

48. Upon and information and belief, New York shall permit Plaintiff to seek reinstatement during July 2026 which is 7 years after the date of Plaintiff's 2019 disbarment order entered by the State of New York.

49. Upon information and belief, The State of New York does not recognize reciprocity with Illinois as The Territory of the District of Columbia does.

50. Due to Defendant Stewart's filing of a Motion to Stay, therefore, Plaintiff may not seek reinstatement with 2 of the jurisdictions he had previously been admitted to practice: 1) Illinois and 2) Washington, D.C., until December 2028 – after an almost 12 year, not the standard 3 or 5 year, wait.

51. If Plaintiff is incorrect with his information and in his belief, The State of New York may do the same.

52. Further, ARDC's disbarment decision, rather than a suspension for a definite period of time, is extremely curious given its very own precedent; the sanction handed out to Plaintiff was extremely harsh.

53. A former McHenry County, Illinois Prosecutor, John Alan Roth, Esq., a law firm partner of the judge who wrongfully convicted Plaintiff, specifically, Judge Michael Feetterer, was found guilty of the very same offense as Plaintiff, however, the facts of Roth's matter were light-years more egregious than Plaintiff's, involving a multitude of charges rather than only one, yet ARDC and the Illinois Supreme Court found in its wisdom to only **suspend Roth for a definite period of 30 months (2.5 years)**, but somehow reasoned to **completely disbar** Plaintiff for effectively **144 months (12 years)**, by refusing to provide any credit for the 6 years Plaintiff was held under "interim suspension" due to Defendant Stewart's Motion to Stay. **Exhibit B** (*In re: John Alan Roth* (IL Sup. Ct. No. M.R. 21872, Comm'n No. 06-CH-72).

54. Upon information and belief, Roth re-offended on the very same charge within that 2.5 year period and never practiced law again.

55. Other similar ARDC disciplining precedent exists, including but not limited to, *In re: Jerald Michael Mangan*, M.R. 22303, Comm'n No. 06-CH-37 and *In re: Gerald Patrick Kenney*, M.R. 8423, Admin. No. 92-CH-293 which resulted in a 2 year suspension and a mere **censure** not a full-fledged suspension or disbarment, respectively. **<u>Exhibits</u> C & D**.

56. It should be noted, that the facts of Plaintiff's underlying case do not constitute the same offense within either The State of New York or within The Territory of the District of Columbia, based on the elements found in their respective statutes and/or limitation periods.

57. In short, Plaintiff would not be convicted of any crime under both New York and Washington, D.C. law.

58. Plaintiff's wrongfully adjudged infraction in Illinois did not involve a client whatsoever.

59. Plaintiff's wrongfully adjudged infraction did not involve misrepresentation, material omission, fraud, theft, embezzlement, illicit drug use or drug trafficking and the like.

60. Plaintiff's wrongfully adjudged infraction did not involve bodily harm or bodily injury to anyone.

61. Plaintiff's wrongfully adjudged infraction was found to have occurred during Summer 2009, almost 20 years ago.

62. There was absolutely **no benefit** to Plaintiff in Defendant Stewart filing a Motion to Stay ARDC proceedings.

63. Had the wrongful conviction been reversed after the appellate, habeas or post-conviction process, ARDC would have wiped any interim suspension, suspension for a definite period of time or disbarment for an indefinite period of time, clean, off of Plaintiff's published attorney record.

64. As stated above, Defendant's Motion to Stay effectively and needlessly extended Plaintiff's "interim suspension" by 6 years.

65. The only result, detrimental to Plaintiff, of the filing of a Motion to Stay ARDC proceedings, was to elongate Plaintiff's waiting-period for reinstatement.

66. As such, Plaintiff detrimentally relied on Defendant Stewart's expertise that, unfortunately, contained this tragic oversight.

67. Defendant Stewart's Motion to Stay constitutes legal malpractice.

68. Furthermore, ARDC's policy of requiring the admission of culpability for a 3-year reinstatement waiting period versus a 5-year waiting period without admission of culpability, necessarily violates the United States Constitution, as well as, the Illinois Constitution.

69. Said policy unreasonably strong-arms a defendant to admit culpability for an offense, even when said defendant is continuing to litigate to have said conviction reversed or vacated.

70. Said policy also necessarily violates an individual's Freedom of Speech guaranteed under the Fourteenth Amendment to the United States Constitution, as well as, the Illinois Constitution to freely assert a defense.

71. So too, this policy necessarily undermines the full guarantees of a right to a meaningful opportunity to assert and present a complete defense, at the trial, state and federal appellate, federal habeas and state post-conviction proceeding levels, embodied within the Sixth Amendment to the United States Constitution, as well as, the Illinois Constitution.

72. A more "narrowly tailored" policy that would not violate the Constitutions would be to permit an attorney's reinstatement eligibility after a 3-year waiting period, where an attorney is continuing to litigate and exhaust all avenues of the state appellate, federal appellate, federal habeas and Illinois post-conviction levels, in being "guaranteed the meaningful opportunity to assert and present a complete defense."

73. Should the attorney be unsuccessful on appeal, habeas and/or in the post-conviction process, then, and only then, the attorney should be provided with the option to either: i) admit culpability to continue to practice, or ii) refuse to admit culpability and be disbarred for a period of 2 additional years before being able to seek reinstatement.

74. The ARDC policy, as it is currently being used, is in league with **forcing, under duress, a false confession of culpability** out of a defendant, so that they may recommence gainfully working in their chosen profession, and as such wholly Unconstitutional.

## Jury Demand

75. Plaintiff respectfully requests a trial by jury.

WHEREFORE, Plaintiff respectfully prays that this Court grant him the following relief, compensatory and punitive damages, costs, attorney's fees, injunctive relief and such other relief as this Honorable Court determines to be right and just.

JAIME T. ZEAS- Plaintiff

/s/ Jaime T. Zeas

Jaime T. Zeas, J.D.
5320 Rita Ave.
Crystal Lake, Illinois 60014
(312) 882-2476
j_zeas@nlaw.northwestern.edu

## VERIFICATION

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint, and that the information contained therein is true and correct. 28 U.S.C. § 1621.

Executed at <u>Chicago, Illinois</u> on <u>December 16</u>, 2025

<u>/s/ Jaime T. Zeas</u>



# SUPREME COURT OF ILLINOIS

SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721

**CYNTHIA A. GRANT**
Clerk of the Court

(217) 782-2035
TDD: (217) 524-8132

December 26, 2023

**FIRST DISTRICT OFFICE**
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

Stephanie L. Stewart
Robinson, Stewart, Montgomery & Doppke LLC
33 North Dearborn Street, Suite 1420
Chicago, IL 60602

In re:   In re: Jaime Teodoro Zeas
        M.R.031908

Today the following order was entered in the captioned case:

> Motion by respondent to make disbarment date retroactive to the effective date of his interim suspension (5/23/17). <u>Denied</u>.

> Order entered by the Court.

Very truly yours,

*Cynthia A. Grant*

Clerk of the Supreme Court

cc:   Jaime Teodoro Zeas
      Jonathan Mathew Wier
      Michelle Thome

Exhibit A

Case: 1:25-cv-15250 Document #: 1 Filed: 12/16/25 Page 13 of 25 PageID #:13

. *Rules and Decisions*

---

Recently Filed Disciplinary Decisions and Complaints | Rules Governing Lawyers and Judges |
Disciplinary Reports and Decisions | Search Help and Collection Scope | Home

## DECISION FROM DISCIPLINARY REPORTS AND DECISIONS SEARCH

### M.R.21878 – In re: John Alan Roth.    (November 20, 2007)

Disciplinary Commission.

The petition by the Administrator of the Attorney Registration and Disciplinary
Commission to impose discipline on consent pursuant to Supreme Court Rule 762(b) is
allowed, and respondent John Alan Roth is suspended from the practice of law for thirty
(30) months and until further order of the Court.

Order entered by the Court.

*2.5 years*

*Exhibit B*

## II.  DESCRIPTION OF MISCONDUCT
### (Conviction for felony possession of child pornography)

5. On April 8, 2004, Respondent was charged in a three-count complaint filed in the Circuit Court of McHenry County with the felony offense of possession of child pornography. On May 20, 2004, a three-count bill of indictment was issued against Respondent in McHenry County on the same charges.

6. On July 28, 2006, Respondent was charged in an amended bill of indictment with forty-three additional counts of possession of child pornography.

7. On August 28, 2006, Respondent entered a plea of guilty to counts Twenty-Five, Twenty-Six and Twenty-Seven of the amended indictment, charging possession of child pornography, Class 3 felonies, in violation of Chapter 720, Section 5/11-20.1a(6) of the Illinois Compiled Statutes. Respondent pled guilty to the following counts of the indictment:

   a. Count Twenty-Five charged that, between December 3, 2003, and April 7, 2004, Respondent committed the offense of possession of child pornography, in violation of Chapter 720, Section 5/11-20.1(a)(6) of the Illinois Compiled Statutes, when he possessed a movie by computer of a child actually or by simulation engaged in any act of sexual conduct or sexual penetration;

   b. Count Twenty-Six charged that, between December 3, 2003, and April 7, 2004, Respondent committed the offense of possession of child pornography, in violation of Chapter 720, Section 5/11-20.1(a)(6) of the Illinois Compiled

PAGE 3:

   Statutes, when he possessed a movie by computer of a child actually or by simulation engaged in any act of sexual conduct or sexual penetration by placing that child's mouth on another's penis; and

   c. Count Twenty-Seven charged that, between December 3, 2003, and April 7, 2004, Respondent committed the offense of possession of child pornography, in violation of Chapter 720, Section 5/11-20.1(a)(6) of the Illinois Compiled Statutes, when he possessed a movie by computer of a child actually or by simulation engaged in any act of sexual conduct or sexual penetration in that an object was in the child's vagina.

8. On August 28, 2006, the court entered a judgment of conviction against Respondent, sentenced him to twelve months of periodic imprisonment, stayed pending his compliance with thirty months probation, with conditions, and entered a forfeiture order against him regarding the computer equipment he used in connection with his criminal conduct.

9. By reason of the conduct outlined in Paragraphs Five through Nine above, Respondent has engaged in the following misconduct:

   a. committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects in violation of Rule 8.4(a)(3) of the Illinois Rules of Professional Conduct;

   b. conduct which is prejudicial to the administration justice in violation of Rule 8.4(a)(5); and

   c. conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute in violation of Supreme Court

Rule 770.

## III.   DESCRIPTION OF AGGRAVATING AND MITIGATING EVIDENCE

10. Respondent has not been previously disciplined by the Court and has been cooperative in the proceedings pending before the Hearing Board.

PAGE 4:

11. The pornography in this case consisted of approximately 40 CD's of video clips containing child pornography. All materials, including Respondent's computer, have been confiscated by the McHenry County Sheriff's Department. Respondent has been compliant with the conditions of his criminal probation and is currently undergoing treatment and counseling as required by those conditions.

12. Respondent voluntarily submitted to an independent forensic evaluation conducted by Dr. Stafford Henry. Dr. Henry diagnosed Respondent with pedophilia, paraphilia and obsessive-compulsive disorder and concluded that because of the progressive nature of his diagnosis and the difficult treatment modalities, Respondent was in need of long-term treatment and lifelong safeguards preventing him from having unchaperoned contact with children.

## IV.   RECOMMENDATION FOR DISCIPLINE
## AND DISCUSSION OF PRECEDENT

13. The Administrator respectfully requests that the Court suspend Respondent from the practice of law for thirty months and until further order of the Court.

14. Although this Court has not specifically addressed a case solely involving a lawyer's conviction for felony possession of child pornography, such convictions have warranted suspension and even disbarment in other states. *See, Mississippi Bar v. Robinson*, 918 So.2d 1264 (Miss. 2005) (lawyer disbarred who was convicted of possession of child pornography); *In re Conn*, 715 N.E.2d 379 (Ind. 1999) (lawyer suspended for two years for downloading child pornography to his computer); *In re Boudreau*, 815 So. 2d 76 (La. 2002) (lawyer disbarred for smuggling and possessing magazines containing child pornography); and *In the Matter of McBroom*, 158 N.J. 258, 729 A.2d 429 (1999) (lawyer suspended for two years for the felony possession of child pornography). This Court has disciplined attorneys for similar convictions and in conjunction with other criminal conduct. *See, In re Mateas*, M.R. 18636, 00 CH 81

PAGE 5:

(March 19, 2003) (lawyer suspended for three years and until further order of Court, with the suspension stayed after the first year by a permanent period of probation for misdemeanor conviction of attempted possession of child pornography); and *In re Wyllie*, M.R. 20494, 05 CH 68 (November 22, 2005) (lawyer disbarred on consent for knowingly transporting and shipping child pornography and for child molestation).

15. The United States Supreme Court has articulated the compelling societal interests underlying child pornography prohibitions:

> It is evident beyond the need for elaboration that a State's interest in ?safeguarding the physical and psychological well-being of a minor' is ?compelling.' ? The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to the psychological, emotional, and mental health of the child.

*(New York v. Ferber, 458 U.S. 747, 756-758 (1982))*. The *Ferber* Court also described the harm caused by child pornography:

[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. Shouvlin, Preventing the Sexual Exploitation

PAGE 6:

of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981).

(*New York v. Ferber, supr,* at 747, 759).

16. The United States Supreme Court has also explained the evils inherent in the possession of child pornography as follows:

First, as *Ferber* recognized, the materials produced by child pornographers permanently record the victim's abuse. The pornography's existence causes the child victims continuing harm by haunting the children in years to come. 458 U.S., at 759, 102 S.Ct., at 2255. The State's ban on possession and viewing encourages the possessors of these materials to destroy them. Second, encouraging the destruction of these materials is also desirable because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity.

(*Osborne v. Ohio,* 495 U.S. 103, 110 (1990)).

17. By committing his crime, Respondent violated the privacy and dignity of the children whose pictures he possessed, and he became a link in the chain which creates and supports the market for the sexual exploitation of children. In light of Respondent's serious criminal conduct, the diagnosis and treatment recommendations of Dr. Henry, and the progressive nature of his diagnosis, a suspension for thirty months and until further order of the Court is an appropriate sanction.

PAGE 7:

**WHEREFORE**, the Administrator, with the consent of the Hearing Board, requests that the Court enter an order suspending Respondent from the practice of law for a period of thirty months and until further order of the Court.

Respectfully submitted,

Jerome Larkin,
Administrator
Attorney Registration and
Disciplinary Commission

By: Christine P. Anderson

Christine P. Anderson
Counsel for Administrator
130 East Randolph Dr., #1500
Chicago, Illinois 60601
Telephone: 312-565-2600

*Rules and Decisions*

Recently Filed Disciplinary Decisions and Complaints | Rules Governing Lawyers and Judges | Disciplinary Reports and Decisions | Search Help and Collection Scope | Home

## DECISION FROM DISCIPLINARY REPORTS AND DECISIONS SEARCH

### *Petition Allowed by the Illinois Supreme Court and Imposing Discipline on Consent*

**Allowed May 19, 2008**

### IN THE SUPREME COURT OF ILLINOIS

In the Matter of:

**JERALD MICHAEL MANGAN,**                    Supreme Court No. M.R. 22303

Attorney-Respondent,                          Commission No. 06 CH 37

No. 6183272.

### PETITION FOR DISCIPLINE ON CONSENT
### PURSUANT TO SUPREME COURT RULE 762(b)

Jerome Larkin, Administrator of the Attorney Registration and Disciplinary Commission, by his attorney, Tracy L. Kepler, pursuant to Supreme Court Rule 762(b), with the consent of Respondent, Jerald Michael Mangan, and his attorney, William J. Martin, and the approval of a panel of the Hearing Board, petitions the Court to enter an order suspending Respondent for two years and until further order of the Court. In support of this petition, the Administrator states:

### I. SUMMARY OF PETITION

1. Respondent was licensed to practice law in Illinois on November 1, 1982, and is fifty years of age.

2. In May 2006, Respondent pled guilty to charges of eavesdropping and unauthorized videotaping of a female associate in his law firm. A detailed description of Respondent's misconduct is set forth in Section II.

3. Respondent has never been previously disciplined and has been cooperative during these proceedings. At the time of the criminal conduct described below, Respondent was suffering from untreated mental health issues, including, but not limited to, voyeurism, fetishism and sexual, depressive and personality disorders. Respondent is currently in sex offender

PAGE 2:

treatment. Additional details about Respondent's mitigating and aggravating evidence are set forth in Section III.

4. A suspension of two years and until further order of the Court is within the range of applicable precedent. See *In re Clark*, 97 CH 111, M.R. 17713 (November 29, 2001). A full description of the recommendation for discipline is contained in Section IV.

*Exhibit C*

5. Respondent's affidavit is attached as Exhibit One. At the time this petition was prepared, a one-count complaint was pending before the Hearing Board. The members of the Board assigned to hear this matter have, as required by Supreme Court Rule 762(b)(1)(b), approved the submission of this matter to the Court as an agreed matter. A copy of the order approving its submission is attached as Exhibit Two. A copy of the transcript of the hearing is attached as Exhibit Three.

## II. DETAILED DESCRIPTION OF THE MISCONDUCT

6. Throughout December 2004 and 2005, Respondent, while he was a partner in a Wheaton, Illinois, law firm, recorded at least one conversation of, and secretly observed and videotaped the actions of, a female attorney associate with the firm. Respondent captured the conversation and thousands of images of the female associate by placing a wireless video recording device in and around the office, including the women's restroom at the firm. Respondent transmitted the recordings and images to his personal computer and, unknowingly, to the firm's computer network server.

7. On May 31, 2006, a two-count information was filed against Respondent in the Circuit Court of DuPage County charging that (1) on December 20, 2004, Respondent committed the offense of eavesdropping, in that he knowingly and intentionally used an unlawful eavesdropping device for the purpose of recording a conversation of the female associate,

PAGE 3:

without her consent, in violation of 720 ILCS 5/14-2(a)(1); and (2) on March 18, 2005, Respondent committed the offense of unauthorized videotaping in that he knowingly and without her consent videotaped under the clothing worn by the female associate for the purpose of viewing her undergarments, in violation of 720 ILCS 5/26-4(a-10).

8. On May 31, 2006, Respondent entered into a plea agreement in which he pled guilty to the information. On that same day, the Court entered judgment of conviction and sentenced Respondent to a term of probation for twenty-four months with special conditions including, *inter alia*, that he undergo a sex offender evaluation and receive counseling as directed by Probation, and that he have no contact with the female associate, except through counsel.

9. As a result of the order of conviction and the conduct described above, Respondent engaged in the following misconduct:

   a. committing criminal acts, eavesdropping and unauthorized videotaping, in violation of 720 ILCS 5/14-2(a)(1) and 720 ILCS 5/26-4(a-10), that reflect adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects in violation of Rule 8.4(a)(3) of the Illinois Rules of Professional Conduct;

   b. conduct which is prejudicial to the administration justice in violation of Rule 8.4(a)(5) of the Illinois Rules of Professional Conduct; and

   c. conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute in violation of Supreme Court Rule 770.

## III. DESCRIPTION OF AGGRAVATING AND MITIGATING FACTORS

10. Respondent has fully cooperated with the Administrator's counsel during the course of this proceeding and has never been previously disciplined. Respondent has expressed remorse for his wrongdoing, has paid

all court-ordered restitution and fines and has been compliant in meeting with his probation officer and in his attendance with counseling as directed

PAGE 4:

by the sex offender evaluation. However, in April 2007, Respondent reported to his probation officer that on two or three occasions, he had taken pictures of a woman who had lived in his apartment complex, used the images for sexual gratification and had accessed the Internet on five to seven occasions between the fall of 2006 and March 2007 to view pornographic material.

11. Since 2006, Respondent has participated weekly in two sexual addiction, self-help group programs, one at College Church in Wheaton, Illinois, and the other at Glen Ellyn Baptist Church, which focus on sexual purity through Christian ideals. Respondent has also occasionally attended Sexaholics Anonymous.

12. Due to the nature of Respondent's criminal conduct, the Administrator requested that he undergo a general psychiatric evaluation performed by Dr. Stafford C. Henry. Following his review of various documents submitted by the Administrator and Respondent, his telephone conference with Respondent's probation officer and his July 3, 2007, and July 25, 2007 interviews of Respondent, Dr. Henry diagnosed Respondent with voyeurism, fetishism and sexual disorder not otherwise specified, depressive disorder not otherwise specified, personality disorder not otherwise specified with narcissistic features as well as other occupational, economic and psychosocial problems. Dr. Henry further opined that due to Respondent's long and extensive history of the above disorders, and his engagement as recently as March 2007 in conduct that led to his criminal conviction, he was at significant risk to violate the Illinois Rules of Professional Conduct and was not appropriate to practice law. Dr. Henry further stated that Respondent's prognosis was quite guarded, he was a candidate for long term mental health treatment and it was unlikely that the sexual disorder symptoms would be in remission at any point in the near future. Dr. Henry recommended that Respondent complete his outpatient treatment as directed by the sex offender evaluation, continue to adhere to the terms of his

PAGE 5:

probation, engage more fully in Sexaholics Anonymous and explore treatment options in his community to locate treaters who would be capable of handling his mental health needs and who would be willing to see him on a sliding scale basis.

13. During the time period in question, Respondent was a member of the DuPage County Bar Association and the ISBA. He was active in his church, Trinity Episcopal, serving as an usher, member of the Building and Grounds Committee, and, in 2005, was elected to the Vestry, or the governing body of membership that oversees the business of the church.

## IV. DISCUSSION OF THE PRECEDENT

14. The Administrator recommends that Respondent be suspended for a period of two years and until further order of Court. This recommendation is appropriate in light of Illinois precedent, similar precedent from another jurisdiction and the factors in mitigation and aggravation.

15. In *In re Clark*, 97 CH 111, M.R. 17713 (November 29, 2001), the Court suspended the respondent for two years and until further order of Court as a result of misconduct arising out of three separate incidents of tying women with a rope and not immediately releasing them. One woman was a member of the support staff at the respondent's firm. The other two women were applicants for associate attorney positions who were interviewed by the respondent. Like the instant matter, the respondent videotaped and photographed the incidents without the permission of the women. The respondent suffered from paraphilia not otherwise specified, which resulted in urges to bind women, and narcissistic personality disorder, and he had been in treatment for his disorders for a number of years with several years of treatment yet remaining. *See also In re*

*Bourgeois*, 25 Ill. 2d 47, 182 N.E.2d 651 (1962), where the attorney's misconduct was attributable to emotional disturbances; the Court explained that, under such circumstances,

PAGE 6:

the attorney should be suspended until further order of the Court so that he would bear the burden of proving his fitness to practice after a period of suspension.

16. In *In re Redd*, 660 So.2d 839 (La. 1995), the respondent, in his position of legal advisor to the Baton Rouge Police Department, met with a woman who was applying for an exotic dancer's permit. The respondent commented on and took photographs of the applicant's breasts, as a result of which he pled guilty to a charge of battery. The court noted in mitigation that respondent had sought treatment from a psychologist who diagnosed a sexual disorder not otherwise specified, he had cooperated in the proceedings, expressed remorse and had a prior reputation for good character. The Court suspended the attorney for one year and one day and conditioned his readmission upon his successfully completing evaluation and treatment by a psychiatrist for a period of one year prior to his application for readmission.[1]

---

[1] Pursuant to sub sec 24A of Rule XIX of the Louisiana Rules of Court, a disbarred lawyer or a suspended lawyer who has served a suspension period of more than one year, exclusive of any waivers or periods of deferral, shall be reinstated or readmitted only upon order of the court.

17. Considering the totality of Respondent's misconduct, his recent repetition of voyeuristic behavior for which he was criminally convicted and the recommendation that long-term treatment for his disorder is required, a sanction of a suspension for two years and until further order of Court is within the range of the above-cited precedent and is warranted in this case.

PAGE 7:

**WHEREFORE**, the Administrator, with the consent of the Hearing Board, requests that the Court enter an order suspending Respondent for two years and until further order of Court.

Respectfully submitted,

Jerome Larkin,
Administrator
Attorney Registration and
Disciplinary Commission

By:  Tracy L. Kepler

Tracy L. Kepler
Counsel for Administrator
Attorney Registration & Disciplinary Commission
One Prudential Plaza
130 E. Randolph Drive, Suite 1500
Chicago, Illinois 60601
Telephone: 312-565-2600

*Rules and Decisions*

## DECISION FROM DISCIPLINARY REPORTS AND DECISIONS SEARCH

### *Petition Allowed by the Illinois Supreme Court and Imposing Discipline on Consent*

*Allowed September 29, 1992*

#### IN THE SUPREME COURT OF ILLINOIS

In the Matter of:

**GERALD PATRICK KENNEY,**

Attorney-Respondent,

No. 03125141.

Supreme Court
No. M.R. 8423

Administrator's
No. 92 CH 293

#### PETITION FOR DISCIPLINE ON CONSENT
#### PURSUANT TO SUPREME COURT RULE 762(b)

Mary Robinson, Administrator of the Attorney Registration and Disciplinary Commission, by her attorney, Leslie A. Schellie, pursuant to Supreme Court Rule 762(b), with the consent of Respondent, Gerald Patrick Kenney, and the approval of Panel D of the Inquiry Board, petitions the Court to enter an order censuring Respondent. In support, the Administrator states:

#### I. SUMMARY

1. Between October 1, 1989, and October 4, 1989, Respondent was in Los Angeles, California, for the purpose of attending an electronics industry environmental seminar. On October 2, 1989, Respondent visited the University of California at Los Angeles campus. While on campus, Respondent went to the university's library and videotaped three women, without their consent or knowledge, as they were seated at study carrels. Respondent positioned his video camera in a manner so that it was directed to view the area under the women's skirts. Respondent was placed under

PAGE 2:

citizen's arrest and subsequently entered a plea of no contest to a charge of trespassing in violation of Section 602(j) of the California Penal Code. Respondent was sentenced to ninety days of community service and ordered to seek psychological counselling for a period of twelve months.

*Exhibit D*

2. Respondent's affidavit, in which he affirms that the assertions in the Petition are true and that he understands the nature and consequences of the Petition, is attached to this petition as Exhibit One.

3. A copy of the order of the Inquiry Board approving the submission of this Petition with the court is attached as Exhibit Two.

4. Respondent's misconduct can be compared to the conduct which formed the basis for discipline in In re Snyder, 336 N.W.2d 533 (Minn. 1983) (censure), Committee on Professional Ethics v Tompkins, 415 N.W.2d 620 (Iowa 1987) (two year suspension) and In the Matter of Geoffrey Peters, 428 N.W.2d 375 (Minn. 1988) (public reprimand). A full explanation of the discipline recommended is set forth in section IV below, at pages 6 through 8.

## II. DESCRIPTION OF MISCONDUCT

5. Between October 1, 1989, and October 4, 1989, Respondent was in Los Angeles, California, for the purpose of attending an electronics industry environmental seminar.

6. Respondent planned to visit certain tourist attractions while in Los Angeles and therefore took a video

PAGE 3:

camera to California in order to videotape portions of his trip.

7. On October 2, 1989, Respondent visited the University of California at Los Angeles campus for the purpose of purchasing a UCLA sweatshirt and to observe the campus.

8. While outside the university's library, Respondent noticed a woman whom he found to be attractive. Respondent turned on his video camera and videotaped the woman as she walked into the library. Respondent followed the woman into the library and stopped videotaping once he was inside.

9. After being in the library for approximately twenty minutes, Respondent saw a woman, whom he found to be attractive, seated at a study carrel. Respondent turned on his video camera, and from a standing position and utilizing the "zoom" feature of the video camera, videotaped the lower half of the woman's body and the area under her skirt. Respondent filmed the woman without her authority or knowledge.

10. After approximately two to three minutes, Respondent turned off the video camera and walked through to another area of the library. Respondent saw another woman whom he found to be attractive seated at a study carrel. Respondent seated himself at an adjacent study carrel. Respondent then turned on the video camera and videotaped the lower half of the woman's body and the area under her skirt. Respondent

PAGE 4:

filmed the woman without her authority or knowledge.

11. After approximately two to three minutes, Respondent turned off the video camera and walked through to another area of the library. Respondent saw another woman whom he found to be attractive seated at a study carrel. Respondent seated himself at a study carrel nearby. Respondent turned on the video camera and videotaped the lower half of the woman's body and the area under her skirt. Respondent filmed the woman without her authority or knowledge.

12. As Respondent was videotaping the third woman he was being observed by a UCLA campus security guard. The security guard notified UCLA Campus Police. Respondent was placed under citizen's arrest after the third woman, who was advised of Respondent's actions by campus police, requested that Respondent be prosecuted.

13. On or about October 23, 1989, the matter entitled, <u>People of the State of California v. Gerald Patrick Kenney</u>, case no. 89 W 08172, was filed in the Los Angeles Municipal Court. Respondent was charged with lewd and dissolute conduct in a public place, trespassing, and disorderly conduct in violation of Sections 647(a), 602(j), and 626.8, respectively, of the California Penal Code.

14. On or about November 27, 1989, Respondent entered a plea of no contest to the charge of trespassing in violation of Section 602(j) of the California Penal Code. The remaining charges against Respondent in case no. 89 W 08172 were dismissed. Respondent was sentenced to ninety days of

PAGE 5:

community service and ordered to seek psychological counselling for a period of twelve months.

15. By reason of the conduct outlined above, Respondent has engaged in the following misconduct:

> a) conduct that is prejudicial to the administration of justice in violation of Rule 1-102(a)(5) of the Illinois Code of Professional Responsibility.

### III. FACTORS TO BE CONSIDERED IN MITIGATION

16. Respondent's affidavit expresses his understanding of the nature of his past conduct, contains Respondent's assurance that he will not engage in the same or similar conduct in the future, and provides an apology to the profession, the courts, and the public.

17. Respondent has not previously been disciplined by the Court or Commission, and has cooperated with the Administrator in proceedings before the Commission Inquiry Board.

18. Respondent has completed twelve months of outpatient counselling pursuant to the order of the Court entered on or about November 27, 1989 in case no. 89 W 08172. James Rust, a counselor at the Elmhurst Memorial Hospital Guidance Center, reported to Los Angeles Municipal Court that Respondent participated actively in the counselling process and addressed problem areas and significant issues.

19. At the Administrator's request, Respondent was psychologically evaluated by Mark McClung, M.D., on January 25, 1991. Dr. McClung reported to the Administrator that

PAGE 6:

Respondent does not suffer from any mental illness or disorder. In Dr. McClung's medical opinion, Respondent's behavior in California was an instance of poor judgment and is not reflective of an underlying sexual disorder. Dr. McClung further stated that Respondent "has no psychological or psychiatric impairment which would impact upon his ability to engage in the practice of law consistent with the standards of the legal profession." According to Dr. McClung's evaluation, Respondent did not meet the criteria for any psychiatric disorder.

20. On January 28, 1991, Linda Grossman, Ph.D., administered psychological testing to Respondent. In her report to Dr. McClung, Dr. Grossman stated, "There is no evidence of any diagnosible psychiatric disorder."

21. Respondent had no criminal record other than the incidents which have given rise to this proceeding prior to this arrest in California.

## IV. RECOMMENDATION FOR DISCIPLINE

22. The Administrator respectfully requests that the Court censure Respondent with respect to his conduct as set forth above.

23. The Court may find guidance involving the disciplining of attorneys for sexual misconduct outside the scope of the attorney-client relationship. In In re Snyder, 336 N.W.2d 533 (Minn. 1983), the Supreme Court of Minnesota censured a judge based on his continued adulterous relationship with a woman. The Court described Judge

PAGE 7:

Snyder's actions as "willful misconduct which, although not related to judicial duties, brings the judicial office into disrepute...." Id. at 535. Similarly, in the present case Respondent engaged in willful misconduct which, although unrelated to his professional duties, did not maintain the integrity of the legal profession.

24. The Supreme Court of Iowa held that a psychosexual disorder resulting in repeated illegal conduct involving moral turpitude warranted a two year suspension in Committee on Professional Ethics v. Tompkins, 415 N.W.2d 620 (Iowa 1987). Attorney Tompkins pleaded guilty to the charge of criminal trespassing in relation to an incident in which he unlawfully entered a residence to obtain women's undergarments by which to sexually gratify himself. In contrast to the present case, attorney Tompkins was diagnosed as having a psychosexual disorder. In addition, unlike the present case, Tompkins engaged in similar conduct on more than one hundred occasions. The circumstances in Tompkins suggest that a more lenient sanction is appropriate in the present case.

25. In In the Matter of Geoffrey Peters, 428 N.W.2d 375 (Minn. 1988), the Supreme Court of Minnesota held that sexual harassment warranted a public reprimand. Attorney Peters, the dean of William Mitchell College of Law, "repeatedly engaged in unwelcome physical contact and verbal communication of sexual nature against four employees...." Id. at 376. In its opinion the Court stated, "A lawyer's

PAGE 8:

Id. at 376. In its opinion the Court stated, "A lawyer's professional capacity, moreover, extends well beyond the attorney-client relationship...." Id. at 380 As in the present case, attorney Peters' actions were unwelcomed by the women involved; however, Respondent's actions were intended to be covert.

**WHEREFORE**, the Administrator, with consent of Respondent Gerald Patrick Kenney and Panel D of the Inquiry Board, requests that the Court enter an order censuring Respondent.

       Respectfully submitted,

       Mary Robinson, Administrator
       Attorney Registration and
       Disciplinary Commission

       By: S/(Leslie A. Schellie)

       Leslie A. Schellie

Counsel for Administrator
203 North Wabash Avenue
Suite 1900
Chicago, Illinois 60601
Telephone: (312) 346-0690